IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| ) | |
| **CHARLOTTE K. WHITFIELD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 08-2085-CM |
| **BRUCE R. CLIPPINGER** ) | |
| **and JEROME S. BOLIN** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

On February 26, 2008, plaintiff Charlotte K. Whitfield brought this action against defendants Bruce R. Clippinger ("defendant Clippinger") and Jerome S. Bolin ("defendant Bolin"). On July 25, 2008, defendants filed Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 17). Plaintiff requested several extensions of time to respond to defendants' motion to dismiss. On September 11, 2008, the court granted plaintiff's third motion for extension of time but warned plaintiff that (1) additional motions for extension of time would be summarily denied and (2) if plaintiff did not file her response by September 15, 2008, defendants' motion would be considered and decided as an uncontested motion. Plaintiff failed to file a response to defendants' motion to dismiss. Although Local Rule 7.4 provides that an uncontested motion "ordinarily" will be granted without further notice, the Rule does not require a court to grant the motion regardless of the evidence of record. *See Calia v. Werholtz*, 408 F. Supp. 2d 1148, 1149 (D. Kan. 2005) (quoting *Green v. Dean*, 03-3225-JWL, 2005 WL 1806427, at *1 n.2 (D. Kan. Aug. 1, 2005) ("While uncontested motions are ordinarily granted, they are not invariably granted.")). Given the record presented, and for purposes of

any appeal, the court will not grant defendants' motion to dismiss solely on a default basis. The court, therefore, will address the merits of defendants' motions to dismiss.

## I.     Factual Background[1]

Defendant Clippinger is, and was at all times relevant to this lawsuit, the President and Chief Executive Officer of Clippinger Enterprises, Inc. ("Clippinger Enterprises"). In January 1992, he hired plaintiff as an Insurance Agent for Clippinger Enterprises. During her first year of employment, plaintiff was routinely subjected to unwelcome sexual advances, rendering her working environment a hostile environment. On April 11, 2002, plaintiff signed a non-competition agreement. In either late 2001 or early 2002, Kathy Anderson ("Ms. Anderson") began working for Clippinger Enterprises. Plaintiff believed that defendant Clippinger and Ms. Anderson were romantically involved. At the same time, defendant Clippinger began to be highly critical of plaintiff's work performance. On December 23, 2004, defendant Clippinger gave plaintiff a First Warning Notice, warning her that her conduct violated company rules and that future violations may lead to immediate dismissal without further notice. Several days later, on December 30, 2004, plaintiff had her first Performance Appraisal Interview Report.

During the last eight months of plaintiff's employment, defendant Clippinger (1) bought a computer program to monitor plaintiff's computer use; (2) monitored plaintiff's phone calls; (3) searched through her trash on a nightly basis; (4) accused her of using the office postal meter to stamp outgoing mail; (5) monitored plaintiff's use of the postal meter; (6) installed a spy camera over the postage meter to try to take pictures of plaintiff posting personal mail, or using the fax machine improperly; (7) constantly interrogated plaintiff about every typographical error she had made, every time she took a personal telephone call, and every time she purportedly mailed out personal mail; and

---

[1] For purposed of this motion, the court relies on the allegations in the complaint as the basis for the factual background.

(8) constantly advised plaintiff that she was prohibited from conducting certain Clipping Enterprises' business on company time and must conduct it after hours.  During the last six months of her employment, defendant Clippinger told plaintiff that he had hired defendant Bolin to assist her, but she later learned that defendant Bolin had been hired to spy on her.  Plaintiff also learned that, at the direction of defendant Clippinger, defendant Bolin was stripping her client files of the information she needed to continue to serve clients.  On February 23, 2006, defendant Clippinger terminated plaintiff.  After plaintiff's termination, defendant Clippinger refused to give plaintiff copies of her client files unless she paid for the copies.  Because plaintiff could not afford to pay the copy charges, she never replied to defendant Clippinger regarding her client files.

Defendants seek to have counts IV and V dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and the remaining counts dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

**II.   Legal Standards**

*A.  Lack of Subject Matter under Rule 12(b)(1)*

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so.  *Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir. 1994).  A court lacking jurisdiction must dismiss the case at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking.  *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F. Supp. 279, 281 (D. Kan. 1995) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974); Fed. R. Civ. P. 12(h)(3)).  "Since federal courts are courts of limited jurisdiction, there is a presumption against federal jurisdiction."  *Id.*  As the party seeking to invoke federal jurisdiction, plaintiff bears the burden of establishing that such jurisdiction is proper.  *Basso*, 495 F.2d at 909.

*B.  Failure to State a Claim under Rule 12(b)(6)*

This court will grant a Rule 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). While the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions, and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id.*

"All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). The court construes any reasonable inferences from these facts in favor of plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). The issue in reviewing the sufficiency of a complaint is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support her claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

**III. Discussion**

    *A. Counts I, II, and III*

Defendants request that the court dismiss counts I, II, and III under Rule 12(b)(6). Count I alleges that defendants conspired "to intentionally interfere with Plaintiff's contracts with Clippinger Enterprises, Inc., individually or d/b/a Clippinger Insurance Agency." (Pl.'s Comp. ¶ 43.) Count II alleges that defendants conspired "to interfere with Plaintiff's prospective business advantage." (Pl.'s Comp. ¶ 48.) Count III alleges that, individually, defendant Clippinger and defendant Bolin (1) intentionally interfered with her contracts with Clippinger Enterprises or (2) intentionally interfered with her prospective business advantage.

    To establish a civil conspiracy in Kansas, plaintiff must establish the following elements:

> (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.

*Diederich v. Yarnevich*, No. 98,810, 2008 WL 4949897, at *8 (Kan. Ct. App. Nov. 21, 2008) (internal quotations omitted).  "Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy."  *Id*. (citing *Stoldt v. City of Toronto*, 678 P.2d 153, 163 (1984)).  Thus, to prevail on count I, II, or III, plaintiff must show that defendants committed the alleged wrongs—(1) intentionally interfered with her contracts with Clippinger Enterprises or (2) intentionally interfered with her prospective business advantage.

"An essential element of a claim for tortious interference with a contract is that the contract must be one to which the defendant is an outsider."  *Battenfeld of Am. Holding, Inc. v. Baird, Kurtz & Dobson*, No. 97-2336-JWL, 1999 WL 232915, at *4 (D. Kan. Feb. 5, 1999).  "In that regard, Kansas does not recognize a claim for tortious interference with contract against an agent or employee of one of the contracting parties, unless there is some suggestion that the agent or employee was acting in his or her individual capacity or for his or her individual advantage."  *Id*.  In her complaint, plaintiff alleges that defendants were acting on behalf of Clippinger Enterprises, as employees, independent contractors, or agents.  Accordingly, defendants cannot be held liable for interfering with plaintiff's contracts with Clippinger Enterprises.  Therefore, plaintiff's claim under this theory must be dismissed.

In order to establish a claim for tortious interference with a prospective business advantage plaintiff must prove: (1) the existence or expectancy of a business relationship of probable future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional and malicious conduct by the defendant; (4) a direct causal relationship between the defendant's misconduct and the loss of the business relationship; and (5) damages suffered by the plaintiff.

*Moeller v. Kain*, 192 P.3d 689 (Kan. Ct. App. 2008) (citing PIK Civ. 4th 124.92).[2]  Plaintiff alleges that defendants tortiously interfered by destroying plaintiff's client files and imposing charges not anticipated in her agreements with Clippinger Enterprises.  After reviewing plaintiff's Amended Complaint the court finds that she has alleged facts to support a cause of action for tortious interference with a prospective business advantage.

Accordingly, counts I, II, and III are dismissed on the theory that defendants interfered with plaintiff's contracts with Clippinger Enterprises, but remain on the theory that defendants interfered with plaintiff's prospective business advantage.

### B.  Count IV

In Count IV, plaintiff alleges that Clippinger Enterprises was the alter ego or business conduit of defendant Clippinger, who "violated public policy in the form of the prohibition by the Kansas Act against Discrimination, K.S.A. 44-1001, et seq., against discrimination in the terms and conditions of and employee's employment on the basis of sex, and, more specifically, sexual harassment against Plaintiff . . . ."  (Pl.'s Comp. ¶ 60.)  Plaintiff alleges that neither defendant Clippinger nor Clippinger Enterprises constitutes an employer under the KAAD.  But in any event, the court lacks subject matter jurisdiction over plaintiff's KAAD claim because she has not alleged that she exhausted her administrative remedies.  A plaintiff may not file suit based on the KAAD before exhausting all administrative remedies, which has been interpreted as meaning that the employee must seek and get a ruling on a petition for reconsideration of an unfavorable determination by the Kansas Human Rights

---

[2] Defendants quote *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241 (10th Cir. 2005) for the proposition that "[u]nder Kansas law, tortious interference with a prospective business relationship requires some type of communication between defendant and the third party in which defendant induces the third party not to engage in a prospective contract or business relation with plaintiff." *Id*. at 1241.  But that quote is from the Westlaw headnotes, not the case.  In the case, the Tenth Circuit found the district court properly granted summary judgment because there was no evidence that defendant directly interfered with plaintiff's business.  *Id*. at 1264–65.

Commission. *Medlock v. Otsuka Pharm., Inc.*, No. 07-2013-JPO, 2008 WL 243674, at *6 (D. Kan. Jan. 29, 2008). "The burden is on plaintiff to plead either that [s]he has exhausted [her] administrative remedies, or that exhaustion of administrative remedies is not required in [her] case." *Id.* (citing *Butler v. Capitol Fed. Sav.*, 904 F. Supp. 1230, 1234 (D. Kan. 1995)). There is nothing in the amended complaint to indicate that plaintiff exhausted her administrative remedies. Moreover, plaintiff has not disputed defendants' assertion that she failed to exhaust her administrative remedies. Accordingly, the court must dismiss plaintiff's KAAD claim for lack of subject matter jurisdiction. Because a dismissal on jurisdictional grounds is not a dismissal on the merits, plaintiff's claim is dismissed without prejudice. *Schroder v. Runyon*, 1 F. Supp. 2d 1272, 1279 (D. Kan. 1998) ("A dismissal on jurisdictional grounds is not a dismissal on the merits and should ordinarily be without prejudice.").

### C. Count V

In Count V, plaintiff alleges that defendant Clippinger violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a), et seq. Again, plaintiff alleges that neither defendant Clippinger nor Clippinger Enterprises, Inc., constitutes an "employer" under Title VII. (Pl.'s Comp. ¶ 69.) But again, that is irrelevant, because this court lacks subject matter jurisdiction over plaintiff's Title VII claim. "Exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit under Title VII." *Medlock,* 2008 WL 243674, at *7 (citations omitted). Plaintiff does not allege that she exhausted her administrative remedies or plead any facts to support exhaustion, and thus, her complaint fails to allege facts that support subject matter jurisdiction. Accordingly, plaintiff's Title VII claim is dismissed without prejudice. *See, e.g., Richardson v. Fowler Envelope Co.*, LLC, 288 F. Supp. 2d 1215, 1222 (D. Kan. 2003) (dismissing plaintiff's Titile VII claim for failure to allege exhaustion of administrative remedies).

### D. Count VI

In count VI, plaintiff alleges defendant Clippinger "violated public policy in the form of the prohibition against sexual harassment articulated in judicial opinions such as *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986)" and Title VII.  (Pl.'s Comp. ¶¶ 79 and 80.)  The claims in *Meritor Savings* arose under Title VII.  477 U.S. at 60.  To the extent plaintiff is alleging employer liability under an agency theory, she fails to state a claim—she named defendant Clippinger as the defendant, not Clippinger Enterprises.  As the court explained above, the court lacks subject matter jurisdiction over plaintiff's Title VII claims.  Accordingly, plaintiff's claim is dismissed.

### E. Count VII

In count VII, plaintiff alleges defendant Clippinger "violated public policy in the form of the prohibition against sexual harassment articulated in regulations of the Equal Employment Opportunity Commission, specifically 29 C.F.R. § 1601, et seq., prohibiting sexual harassment" against plaintiff.  (Pl.'s Comp. ¶¶ 89.)  These regulations "contain the procedures established by the Equal Employment Opportunity Commission for carrying out its responsibilities in the administration and enforcement of title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990."  29 C.F.R. § 1601.1  They do not create a private cause of action independent of Title VII.  As set forth above, the court lacks subject matter jurisdiction over plaintiff's Title VII claims.  Plaintiff's claim is therefore dismissed.

### F. Count VIII

Defendants characterize plaintiff's claim in count VIII as a claim for wrongful termination, but plaintiff's claim asserts a common-law claim for sexual harassment.  Plaintiff alleges defendant Clippinger "violated public policy in the form of the prohibition against sexual harassment arising out of public awareness in this country that any form of sexual harassment . . . is not just illegal, but

reprehensible." (Pl.'s Comp. ¶¶ 99.)  "Common law claims for injuries alleged to have resulted from sexual harassment during the course of employment have often been barred by a state workers' compensation law that provides an exclusive remedy for employee injuries." 45B Am. Jur. 2d Job Discrimination § 845.  But common-law harassment claims are not barred by the exclusive remedies provided under the workers' compensation law in all states.  6 Emp. Discrim. Coord. Analysis of Related Issues and Actions § 55:3.  Because neither party addresses whether plaintiff has stated a viable claim under Kansas law, the court denies defendant's motion.

### G. Count IX and Count X

In counts IX and X, plaintiff alleges claims for intentional and negligent infliction of emotional distress against defendant Clippinger.  Both claims are governed by the two-year statute of limitations set for in K.S.A. § 60-513(a)(4)—"An action for injury to the rights of another, not arising on contract, and not herein enumerated."  K.S.A. § 60-513(a)(4); *Hallam v. Mercy Health Ctr. of Manhattan, Inc.*, 97 P.3d 492, 497 (Kan. 2004) ("The statute of limitations on a claim of outrage and intentional infliction of emotional distress is 2 years.").  Here, plaintiff's employment was terminated on February 23, 2006.  Under the two-year statute of limitations plaintiff's claims for intentional and negligent infliction of emotional distress expired on February 23, 2008—three days before plaintiff filed this action.  The court therefore finds that defendant's motion to dismiss these claims should be granted.

### H. Count XI

Plaintiff alleges that defendant Clippinger invaded her privacy.  Under K.S.A. § 60-513(a)(4), a cause of action for invasion of privacy is subject to a two-year statute of limitations.  *Williams v. McKamie*, No. 04-215-KHV, 2005 WL 1397381, at *2 (D. Kan. June 13, 2005) ("The applicable statute of limitations in an invasion of privacy action is K.S.A. § 60-513(a)(4), which sets forth a two-

year statute of limitations for torts involving injury to the rights of another."). Plaintiff was terminated on February 23, 2006. Under the two-year statute of limitations, her invasion of privacy claim expired on February 23, 2008, three days before she filed this action. Accordingly, plaintiff's claim is dismissed.

### I.  Count XII

In count XII, plaintiff alleges that defendant Clippinger breached his duty to maintain a safe workplace by exposing plaintiff to sexual harassment. Under Kansas law, an employer does not have a duty to maintain a safe workplace free from the psychological harm of sexual harassment. *Beam v. Concord Hospitality, Inc.*, No. 93-4188-SAC, 1994 WL 129979, at *8 (D. Kan. Mar. 29, 1994) ("This court agrees that an employer does not have a duty under Kansas common law to maintain a workplace free from the psychological harm of sexual harassment.") (agreeing with the Eight Circuit decision in *Perkins v. Spivey*, 911 F.2d 22 (8th Cir. 1990)). Here, plaintiff alleges she was sexually harassed by "[h]aving to observe and even feel all of the sexual behavior by Defendant Clippinger toward Kathy Anderson, and by Kathy Anderson toward Defendant Clippinger in return, and to be forced to exist in me [sic] sexually charged environment which resulted on a daily basis, was an experience totally unwelcome to Plaintiff." (Pl.'s Comp. ¶¶ 62 and 125.) Plaintiff does not allege any physical abuse. Because Kansas does not recognize a common law cause of action for failure to provide a safe work place arising from psychological sexual harassment, defendants' motion is granted.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 17) is granted in part and denied in part. Counts I, II, and III remain pending—on the theory that defendants interfered with plaintiff's prospective business advantage—and count VIII remains pending. All other claims are dismissed.

Dated this <u>7th</u> day of January 2009, at Kansas City, Kansas.

<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
**United States District Judge**